UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BONNIE MOSER, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:20 CV 724 ACL |
| KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security<br>Administration,[1] | ) ) ) ) ) |
| Defendant. | ) ) |

# **MEMORANDUM**

Plaintiff Bonnie Moser brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Moser's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636.  A summary of the entire record is presented in the parties' briefs and is presented here only to the extent necessary.

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021.  Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Kilolo Kijakazi is substituted for Andrew Saul as defendant in this action.  No further action is needed for this action to continue.  *See* 42 U.S.C. § 405(g) (last sentence).

For the following reasons, the decision of the Commissioner will be affirmed.

## I. Procedural History

On March 29, 2018 and April 12, 2018, respectively, Moser filed her applications for DIB and SSI benefits. (Tr. 439, 1379-1404.) She claimed she became unable to work on November 1, 2011, due to chronic pain, arthritis, nerve pain, back pain, leg pain, right arm pain, left shoulder pain, and depression. (Tr. 1424.) Moser was 41 years of age at her alleged onset of disability date. Her applications were denied initially. (Tr. 1321-22.) Moser's claims were denied by an ALJ on November 27, 2019. (Tr. 439-48.) In her opinion, the ALJ noted that Moser had filed prior applications for benefits, which were denied by a different ALJ on November 13, 2013. (Tr. 439.) The ALJ stated that she was not reopening the prior ALJ's decision, and explained that the decision at issue would only consider Moser's eligibility for benefits since November 14, 2013. *Id.* On April 10, 2020, the Appeals Council denied Moser's claim for review. (Tr. 1-5.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Moser first argues that the ALJ "improperly evaluated raw medical findings." (Doc. 18 at 3.) She next argues that the RFC "is not supported by substantial evidence." *Id.* at 5. Finally, Moser contends that the ALJ "failed to conduct a proper pain evaluation." *Id.* at 8.

## II. The ALJ's Determination

The ALJ first found that Moser meets the insured status requirements of the Social Security Act through December 31, 2022. (Tr. 442.) She stated that Moser has not engaged in substantial gainful activity since the established alleged onset date of November 14, 2013. *Id.*

In addition, the ALJ concluded that Moser had the following severe impairments: degenerative disc disease; degenerative joint disease; status post reconstructive surgery of the right elbow; chronic obstructive pulmonary disease; and obesity. *Id.* The ALJ found that Moser did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 443.)

As to Moser's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), including the ability to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk up to 6 hours in an 8 hour workday, and sit up to 6 hours in an 8 hour workday. She can never climb ladders, ropes and scaffolds, but can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl, and frequently reach. The claimant can frequently handle, finger and feel with the dominant right upper extremity. She must avoid even moderate exposure to vibration and avoid all exposure to fumes, odors, dusts, gases, poor ventilation and hazards.

(Tr. 443-44.)

The ALJ found that Moser was capable of performing past relevant work as a motor vehicle dispatcher and service order dispatcher as generally performed. (Tr. 447.) The ALJ therefore concluded that Moser was not under a disability, as defined in the Social Security Act, from November 1, 2011, through the date of the decision. (Tr. 448.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on March 29, 2018, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on April 12, 2018, the claimant is not disabled

under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

### III.  Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).  Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.  *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).  This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."  *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted).  "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis."  *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

> 6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).

**III.B.  Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful

work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, reaching out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.   If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.   20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.   20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4).   "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations."   *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. § 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id*.   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and

his age, education, and work experience.  *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n. 5 (8th Cir. 2000).   The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.  *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. § 416.920(a)(4)(v).   At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant.   *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### IV.  Discussion

Moser challenges the ALJ's evaluation of the credibility of Moser's subjective complaints and her review of the medical evidence in determining Moser's RFC.   The undersigned will address these claims in turn.

**1.  Consistency of Subjective Complaints**[2]

A claimant's RFC is the most she can do despite her physical or mental limitations. *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004).   The ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant, credible evidence in the

---

[2] In 2017, the Social Security Administration issued a new ruling that eliminated the use of the term "credibility" when evaluating a claimant's subjective statements of symptoms, clarifying that "subjective symptom evaluation is not an examination of an individual's character."   SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished).   The factors to be considered in evaluating a claimant's statements, however, remain the same.   *See id*. at *13 ("Our regulations on evaluating symptoms are unchanged.").   *See also* 20 C.F.R. §§ 404.1529, 416.929.   This new ruling applies to the Commissioner's final decisions made on or after March 28, 2016.

record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). Accordingly, when determining a claimant's RFC, the ALJ must evaluate the consistency of the claimant's subjective statements of symptoms with the evidence of record. *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005).

For purposes of social security analysis, a "symptom" is an individual's own description or statement of her physical or mental impairment(s). SSR 16-3p, 2017 WL 5180304, at *2 (Soc. Sec. Admin. Oct. 25, 2017) (republished). If a claimant makes statements about the intensity, persistence, and limiting effects of her symptoms, the ALJ must determine whether the statements are consistent with the medical and other evidence of record. *Id.* at *8.

When evaluating a claimant's subjective statements about symptoms, the ALJ must consider all evidence relating thereto, including what are familiarly known as "the *Polaski* factors," that is, the claimant's prior work record; daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted); *see also* 20 C.F.R. §§ 404.1529, 416.929. If the ALJ finds that the statements are inconsistent with the evidence of record, she must make an express determination and detail specific reasons for the weight given the claimant's testimony. SSR 16-3p, 2017 WL 5180304, at *10; *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012); *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). While an ALJ must acknowledge and consider the *Polaski* factors, she

need not discuss each one before discounting a claimant's subjective statements. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010).

Here, after finding at Step 3 of the sequential analysis that Moser's impairments did not meet the criteria for listing-level disability, the ALJ evaluated Moser's statements of pain and symptoms and assessed her RFC. The ALJ properly cited and considered the *Polaski* factors and made specific findings that Moser's claimed symptoms were inconsistent with the record. Because these findings are supported by substantial evidence on the record as a whole, the undersigned must defer to the ALJ's determination. *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016).

The ALJ summarized Moser's testimony regarding her pain and limitations due to her physical[3] impairments as follows:

> She had a procedure on her right arm about 6 or 7 years ago and she can no longer write, type, lift things or use a broom. She said she has joint and nerve pain all of the time. The claimant testified that she can only lift and carry up to 5 pounds, stand 10 minutes, and sit 10 to 15 minutes. She lies down most of the day. She still takes Oxycodone, muscle relaxers and Gabapentin for pain. Her medications cause sleepiness. The claimant testified that she has pain in her left shoulder, back, left leg and left knee.

(Tr. 444.)

The ALJ first noted that Moser testified that she stopped working because her company went out of business. (Tr. 444, 1238.) "Courts have found it relevant to credibility when a claimant leaves work for reasons other than her medical condition." *Goff*, 421 F.3d at 793; *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001) (finding the claimant did not lose his job because of his disability, he lost it because his position was eliminated); *Medhaug v. Astrue*, 578

---

[3]Although the ALJ found Moser also suffered from non-severe mental impairments, Moser does not challenge the ALJ's findings regarding her mental impairments. As such, the undersigned's discussion will be limited to Moser's physical impairments.

F.3d 805, 816-17 (8th Cir. 2009) (discussing the relevance of plaintiff being laid off and claiming that date as also the alleged onset of disability).

The ALJ next stated that the medical evidence does not fully support the severity of Moser's alleged pain and limitations. (Tr. 444.) An ALJ may not disregard subjective allegations solely because they are not fully supported by objective medical evidence, but may afford them less weight if inconsistencies exist in the record as a whole. *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012). An ALJ is "entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002) (citing 20 C.F.R. §§ 404.1529(c) & 416.929(c)).

Although Moser has been treated for right knee pain and swelling, the ALJ noted that examinations have not shown significant findings. For example, in April 2017, Moser presented for pain management but had normal range of motion of the right knee with no tenderness, swelling, effusion, or ligament pain on examination. (Tr. 444, 4120.) Moser underwent x-rays of the right knee in January 2018 and September 2018, which were negative. (Tr. 445, 3781, 4183.) In December 2018, Moser complained of right knee and mid-back pain, but no swelling of the knees was observed, and only mild diffuse tenderness of the lumbosacral spine was found on examination. (Tr. 444, 3656.) Moser underwent a steroid injection into the right knee in January 2019, at which time she was found to have a normal gait, full range of motion of the knee, and good strength. (Tr. 444, 3765.) Only some tenderness and mild crepitus of the knee were noted. *Id.* Moser was counseled as to conservative interventions including weight loss and smoking cessation. (Tr. 3766.) In February 2019, Moser presented to an orthopedist requesting a right knee replacement. (Tr. 3771.) On examination, Moser was obese, "reeked of

cigarette smoke," had no swelling deformity in either knee, no effusion or crepitus, 0 to 135 range of motion, mild tenderness with firm palpation, no lower extremity edema, and an unremarkable gait.  (Tr. 455, 3772.)  Moser was diagnosed with probable patellofemoral pain syndrome with likely early degenerative patellofemoral disease on the right.  *Id.*  The orthopedist advised Moser that her degree of degeneration in her knee would not warrant knee replacement.  *Id.*  Instead, he recommended physical therapy and use of a knee sleeve that was provided.  *Id.*  In March 2019, an examining primary care physician noted diffuse tenderness on palpation of the right knee, decreased range of motion, and moderate to severe crepitus.  (Tr. 445, 3639.)  The following month, moderate tenderness on palpation of the right knee was noted on examination.  (Tr. 445, 3634.)  Moser was instructed to stop smoking and was referred for smoking cessation counseling.  (Tr. 3635.)  In May 2019, Moser had mild diffuse swelling and she was walking with a limp.  (Tr. 445, 3625.)  The ALJ summarized that the medical evidence reveals only minimal objective evidence of limitations, noting that Moser's gait was usually normal.  (Tr. 445.)

With respect to Moser's back pain, the ALJ noted that a February 2017 MRI of the cervical and lumbar spine revealed C5-6 diffuse protrusion with an annular tear effacing the thecal sac, disc desiccation at L3-4 and L5-S1, and diffuse disc protrusion without effacement of the thecal sac at L5-S1; but no spinal canal or neural foramina stenosis at any level.  (Tr. 445, 4177, 4179.)  Subsequent MRIs in 2018 and 2019 revealed similar findings of dessication and degeneration, but no significant bulging, protrusion, or spinal stenosis or stenosis.  (Tr. 445, 3679, 3790, 4087.)  The ALJ stated that, although these findings are "consistent with some pain and limitation, not to the severity alleged by Moser."  (Tr. 445.)  The ALJ additionally noted that the findings on examination have been normal.  (Tr. 445.)  For example, Moser reported no

back pain and her pain management physician noted full range of motion on examination in April 2017 (Tr. 445, 4120); and in November 2018, Moser's primary care physician noted only mild tenderness on palpation of the lumbosacral spine, with no muscle spasms (Tr. 445, 3670).

The ALJ noted that, although Moser testified that she cannot work due to an injury to the right upper extremity that occurred more than fifteen years ago and a somewhat more recent motor vehicle accident, the record reveals minimal findings regarding upper extremity limitations.  (Tr. 446.)   In April 2017, Moser had full strength of the upper extremities bilaterally (Tr. 446, 4120); and in August 2018, she had no tenderness, pain, or swelling of the elbows, with normal strength (Tr. 446, 3712.)   In January 2019, she had full right shoulder abduction but slightly reduced (4/5) strength of the right elbow, wrist, and finger.   (Tr. 446, 4080.)   The ALJ concluded that this evidence supports only some slight limitation in Moser's use of her right elbow, hand, and fingers.   (Tr. 446.)

Next, the ALJ acknowledged that Moser has been diagnosed with COPD, but noted that she has not received much treatment for breathing issues.   (Tr. 446.)   The record does not indicate Moser has experienced any exacerbations that have warranted emergency room visits or hospitalizations.

In discussing the medical evidence of record, the ALJ also considered evidence that Moser frequently requested narcotic pain medications.   (Tr. 447.)   The record is replete with such evidence.   In September 2014, Moser presented to the emergency room with complaints of chronic pain, and reported she was out of her narcotic pain medications.   (Tr. 2495.)   The examining physician noted that Moser had been seen multiple times at that facility over the past three weeks and not followed-up with providers as directed.   *Id.*   The physician advised Moser that he would not provide her with additional narcotic prescriptions because she had had several

filled by multiple physicians within the past few weeks. (Tr. 2497.) Moser became upset and left against medical advice, refusing treatment or nonnarcotic pain medication. *Id.* In June 2015, Moser presented to the emergency room reporting that her pain medication had been stolen and requesting a prescription for pain medication. (Tr. 2427.) She was advised that the contract she signed with her pain management physician required that she make a police report before new medication would be prescribed, but she could still be seen by emergency room physicians. *Id.* Moser elected to leave against medical advice. *Id.* In an August 2015 treatment note, the examining physician indicated that there were "numerous instances of drug-seeking behavior" in Moser's chart. (Tr. 2414.) The physician advised Moser that he would not be providing long-term narcotics. *Id.* A claimant's misuse of medications is a valid factor in an ALJ's credibility determination. *Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1985) (claimant's "drug-seeking behavior further discredits her allegations of disabling pain"); *Anderson v. Barnhart*, 344 F.3d 809, 815 (8th Cir. 2003) (claimant's misuse of medications is a valid factor in ALJ's credibility determination). Additionally, an ALJ may properly consider a plaintiff's failure to comply with suggested treatment, including failing to quit smoking. *See Choate v. Barnhart*, 457 F.3d 865, 872 (8th Cir. 2006).

Finally, the ALJ discussed Moser's testimony regarding her daily activities. In her Function Report, Moser indicated that she lived in a house by herself, has a dog, shops for groceries, watches television and movies daily, and spends time with her children, family, and friends on a weekly basis. (Tr. 446, 1448-1451.) She is able to prepare simple meals daily, but does not do any housekeeping, laundry, or yard work, and has a "caregiver/housekeeper" provided by State Medicaid. *Id.* The ALJ noted that Moser testified that she cared for her elderly uncle for about a year, until December 2017; and that she cared for her father for years

prior to that. (Tr. 446, 3575, 1236-1237.) Moser testified that she was paid by her uncle and her father in cash. *Id.* The ALJ found that Moser's ability to care for another ill individual during her alleged period of disability "suggests that she is more physically capable than alleged." (Tr. 446.) Moser's activities during the relevant period—particularly her ability to provide care to others—can be seen as inconsistent with her subjective complaints of extreme symptoms, and they may be considered alongside other factors in assessing the severity of her subjective complaints. *See Medhaug*, 578 F.3d at 815 (ALJ properly considered the employment plaintiff maintained after the alleged onset of disability, because working generally demonstrates an ability to perform substantial gainful activity); *Wagner*, 499 F.3d at 852-53 (finding claimant's accounts of "extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends" supported the ALJ's conclusion that claimant's complaints were not fully credible); *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (finding that in assessing a claimant's credibility, the ALJ properly considered the fact that the claimant took care of her eleven-year-old child, drove her to school and did other driving, fixed simple meals, did housework, shopped for groceries, and had no difficulty handling money).

In sum, the ALJ thoroughly reviewed Moser's testimony and other evidence of record in a manner consistent with *Polaski*, and articulated specific reasons to find Moser's symptoms and limitations were inconsistent with the record. Because this determination is supported by good reasons and substantial evidence on the record as a whole, the undersigned must defer to it. *Julin*, 826 F.3d at 1086.

**2. Medical Evidence**

Moser next argues that the ALJ erred in evaluating the medical evidence when

determining Moser's RFC.   Specifically, Moser contends that the ALJ "has taken it upon herself to review the objective findings and somehow formulate how those findings affect the plaintiff's ability to function in the workplace."   (Doc. 18 at 5.)   Moser also argues that the ALJ erred in relying on the opinion of the state agency physician.

It is the ALJ's responsibility to determine a claimant's RFC by evaluating all medical and non-medical evidence of record.   20 C.F.R. §§ 404.1545, 404.1546, 416.945, 416.946.   Some medical evidence must support the ALJ's RFC finding, but there is no requirement that the evidence take the form of a specific medical opinion from a claimant's physician.   *Myers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011).   "The determination of a claimant's RFC during an administrative hearing is the ALJ's sole responsibility and is distinct from a medical source's opinion."   *Wallenbrock v. Saul*, No. 4:20-CV-00182-SRC, 2021 WL 1143908, at *6 (E.D. Mo. Mar. 25, 2021) (citing *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2013)).   Additionally, when determining a claimant's RFC, the ALJ must evaluate the credibility of the claimant's subjective complaints.   *Wagner*, 499 F.3d at 851; *Tellez*, 403 F.3d at 957.

The ALJ determined that Moser was capable of performing light work, with additional limitation of never climbing ladders, ropes and scaffolds; occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; frequently reaching; frequently handling, fingering, and feeling with the dominant right upper extremity; must avoid even moderate exposure to vibration; and must avoid all exposure to fumes, odors, dusts, gases, poor ventilation, and hazards.   (Tr. 443-44.)   In making this determination, the ALJ evaluated the medical opinion evidence.

A "medical opinion" is a statement from a medical source about what an individual can still do despite her impairments, and includes limitations or restrictions about the ability to perform physical, mental, sensory, and/or environmental demands of work. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). Under the revised Social Security regulations,[4] the agency "[w]ill not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(b)(2). Instead, the ALJ must assess the persuasiveness of all medical opinions and prior administrative medical findings using a number of factors, including 1) the supportability of the opinion with objective medical evidence and explanations; 2) the consistency of the opinion with evidence from other medical and nonmedical sources; 3) the relationship of the provider to the claimant, including the length, nature and frequency of treatment; 4) the specialization of the provider; and 5) other factors, including the source's familiarity with the Social Security guidelines. *See* 20 C.F.R. § 404.1520c. The ALJ must explain how they considered the factors of supportability and consistency in their decisions but are not statutorily required to discuss the other factors. 20 C.F.R. § 404.1520c(b)(2).

First, to the extent Moser suggests that her RFC should have been determined or confirmed by a medical source, Moser is mistaken. As stated above, it is the ALJ's role to evaluate the record in its entirety, including medical opinions and testimony, and formulate a claimant's RFC based on all the relevant, credible evidence of record. *See Perks v. Astrue*, 687

---

[4] The new regulations are applicable to Moser's claims because she filed her appeal after March 27, 2017. *See* 20 C.F.R. §§ 404.1520c, 416.920c.

F.3d 1086, 1092 (8th Cir. 2012).   The ALJ's RFC determination was not required to be entirely consistent with any one medical opinion.

Dr. McGraw, a non-examining state agency medical consultant, provided a Physical Residual Functional Capacity Assessment on July 19, 2018.   (Tr. 1297-1300.)   Dr. McGraw expressed the opinion that Moser was capable of lifting 20 pounds occasionally and 10 pounds frequently, standing or walking six hours in an eight-hour workday, and sitting a total of six hours in an eight-hour workday; could frequently climb ramps and stairs, kneel, and crawl; could occasionally stoop; could never climb ladders, ropes, or scaffolds; was limited in her ability to reach and handle on the right; should avoid even moderate exposure to vibration; and should avoid all exposure to fumes, odors, dust, gases, poor ventilation, and hazards.   *Id.*

The ALJ properly indicated that she would not defer to or give any specific evidentiary weight to any prior administrative medical findings or medical opinions pursuant to the new regulations.   (Tr. 447.)   She stated that she found that the prior administrative medical findings of Dennis McGraw, D.O. were "persuasive."   (Tr. 447.)   The ALJ stated that Dr. McGraw's findings were "generally consistent with the overall medial evidence, the objective findings on x-rays and MRIs, the claimant's conservative treatment for pain and her lack of mental health treatment."   (Tr. 447.)

Moser argues that the ALJ erred in relying solely upon Dr. McGraw's opinions, because the opinion was provided over a year prior to the administrative hearing and because Dr. McGraw failed to indicate the frequency with which Moser could use her right upper extremity.

The undersigned finds that the ALJ conducted a proper assessment of Dr. McGraw's opinions.   Dr. McGraw, as a state agency physician, is an expert qualified to provide opinions on a claimant's functional limitations based on a review of the record.   *See* 20 C.F.R. §§

404.1513a(b)(1), 416.913a(b)(1) (2017) (noting that state agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation).   As the ALJ noted, Moser received conservative treatment for her impairments and the objective findings on imaging were minimal.   Although Dr. McGraw authored his opinion a year prior to the hearing, Moser fails to point to any medical evidence that would have impacted Dr. McGraw's opinions regarding her limitations.

Further, the ALJ did not rely solely on Dr. McGraw's opinion when determining Moser's RFC.   Instead, she considered all of the medical and non-medical evidence of record when making her determination.   The fact that Dr. McGraw did not address the precise frequency with which Moser could use her upper extremity is of no consequence, because the ALJ's RFC need not be supported by a medical opinion.   The ALJ imposed upper extremity restrictions based on the medical findings on examination.

The Court finds that the evidence relied upon by the ALJ constitutes substantial evidence, including medical evidence, to support the RFC assessment.   With regard to Moser's musculoskeletal impairments, the ALJ considered the objective medical evidence, including the results of imaging and other testing, and findings on examination.   She also properly considered the opinions of Dr. McGraw.   The ALJ's determination that Moser was capable of performing a limited range of light work is supported by Dr. McGraw's opinions.   The ALJ's RFC is slightly more restrictive than that of Dr. McGraw's in that the ALJ found Moser could only occasionally use ramps, stairs, kneel, crouch, and crawl, whereas Dr. McGraw found Moser could frequently engage in these activities.   She adequately accounted for Moser's right upper extremity impairment by limiting Moser's reaching, handling, fingering, and feeling on the right.   The ALJ considered Moser's COPD by limiting her exposure to respiratory irritants.   The ALJ's

determination is consistent with Moser's ability to work as a caretaker for elderly patients during a large part of the relevant period despite her physical impairments.

In her discretion, the ALJ made an RFC finding that did not precisely reflect a medical opinion of record.  *See Martise*, 641 F.3d at 927 (ALJ is not required to rely entirely on one particular physician's opinion or choose between opinions).  A restriction to a limited range of light work adequately accounts for Moser's combination of impairments.  Moser has failed to demonstrate that the ALJ's decision was outside the available "zone of choice."

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

                                                    /s/ Abbie Crites-Leoni
                                                  ABBIE CRITES-LEONI
                                                  UNITED STATES MAGISTRATE JUDGE

Dated this 30th day of September, 2021.